UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF THE EXTRADITION OF GEORGI PETROV YUSEV | ) ) ) ) | No. 12 M 727<br><br>Magistrate Judge Sidney I. Schenkier |

**MEMORANDUM OPINION AND ORDER**

Defendant Georgi Petrov Yusev is currently in the custody of the United States Marshal awaiting a hearing on the extradition request of the Government of the Republic of Bulgaria ("the Bulgarian government"). He has moved for release on bond pending the hearing, currently set for April 16, 2013 (doc. # 13). For the reasons explained below, we deny Mr. Yusev's motion.

**I.**

The procedural facts relevant to this motion are as follows. Mr. Yusev was arrested by Bulgarian authorities on October 17, 2006, and later charged with narcotics possession, committing unlawful damage to motor vehicles, and inflicting minor bodily injury to intelligence officers (doc. # 1: Compl. for Provisional Arrest at ¶ 3; doc. # 15: Gov.'s Resp. to Mot. for Release on Bond at 2-3). After missing several court hearings in his case, on November 18, 2008, Mr. Yusev applied for a United States nonimmigrant visa with a fraudulently obtained passport in the name of Kamen Aleksandrov Vasev, and on December 3, 2008, he arrived at Chicago's O'Hare International Airport. On December 15, 2008, the District Court in Bulgaria ordered that Mr. Yusev be held on remand, but a search for him was unsuccessful. On April 13, 2010, Mr. Yusev was convicted in absentia in the District Court in Bulgaria (Gov.'s Resp. at 2).

On March 29, 2012, a federal grand jury in the Northern District of Illinois returned an indictment against Mr. Yusev, charging him with visa fraud. *United States v. Yusev*, 12 CR 230

(N.D. Ill.). In an order dated June 4, 2012, this Court granted the government's motion to detain Mr. Yusev and denied Mr. Yusev's request for pretrial release on bond, finding that Mr. Yusev presented a serious risk of flight and that conditions of release would not reasonably assure against that risk (12 CR 230: doc. # 24). On September 20, 2012, Mr. Yusev pled guilty to the charge of visa fraud, and on November 17, 2012, he was sentenced to sixth months' imprisonment, time served, and remanded into the custody of the U.S. Immigration and Customs Enforcement agency pending removal proceedings (Gov.'s Resp. at 3).

On January 14, 2013, Mr. Yusev was arrested pursuant to a complaint filed at the Bulgarian government's request under the extradition treaty ("Treaty") between the United States and Bulgaria. That same day, Mr. Yusev had his initial appearance before this Court, and the Court ordered that he remain in federal custody pending the extradition hearing or further order of the Court (doc. # 6). On February 5, 2013, Mr. Yusev filed his present motion for release on bond pending the hearing (doc. # 13)

## II.

The parties agree that neither the Bail Reform Act of 1984, nor its presumption in favor of release on conditions, governs our consideration of Mr. Yusev's motion, because an extradition proceeding is not a criminal case. *See In re Extradition of Rouvier*, 839 F. Supp. 537, 539 (N.D. Ill. 1993). For the legal standard to use in determining whether to release Mr. Yusev on bond, both parties point the Court to the 110-year-old case, *Wright v. Henkel*, 190 U.S. 40 (1903). In *Wright*, the Supreme Court explained that in cases of foreign extradition pursuant to treaty, the demanding government (here, the Bulgarian government) "is entitled to the delivery of the accused on the issue of the proper warrant, and the other government is under obligation to make the surrender; an obligation which it might be impossible to fulfill if release on bail were

permitted." *Id.* at 62. The Supreme Court stated that "[t]he enforcement of the bond, if forfeited, would hardly meet the international demand; and the regaining of the custody of the accused obviously would be surrounded with serious embarrassment." *Id.*

Federal courts have consistently interpreted *Wright* to mean that "there is a presumption against bail in extradition cases that can only be overcome by a showing of 'special circumstances.'" *Sahagian v. United States*, 864 F.2d 509, 514 n.6 (7th Cir. 1988). The term "special circumstances," however, "has eluded judicial definition and there is an absence of any bright line parameters to it." *In re Extradition of Molnar*, 182 F. Supp. 2d 684, 688 (N.D. Ill. 2002) (collecting cases). Special circumstances have been described as "limited to situations in which the justification [for release] is pressing as well as plain." *See United States v. Kin-Hong*, 83 F.3d 523, 524 (1st Cir. 1996); *see also United States v. Nolan*, No. 08 M 97, 2009 WL 4544699, at *3 (N.D. Ill. Dec. 1, 2009).

Some courts have found special circumstances where the extraditee had shown one or more of the following factors: (1) a serious health threat while detained; (2) significant or unusual delay in the appeals or extradition process; (3) a high probability of success on the merits; and (4) the requesting country would grant bail in a comparable extradition case. *See, e.g., United States v. Castaneda-Castillo*, 739 F. Supp. 2d 49, 55-57 (D. Mass. 2010) (collecting cases); *Nolan*, 2009 WL 4544699, at *2; *Molnar*, 182 F. Supp. 2d at 688-89; *but see Rouvier*, 839 F. Supp. at 540 (holding that availability of bail in the extraditing country was irrelevant). Whether or not the defendant is a flight risk does not fall within the ambit of "special circumstances" determinations. *Molnar*, 182 F. Supp. 2d at 687. "Rather, special circumstances must exist in addition to absence of the risk of flight before a defendant in an extradition matter could be released from custody." *Id.*

3

Mr. Yusev argues that two factors meet the "special circumstances standard" in his case: (1) the extradition request by Bulgaria is politically motivated and not supported by probable cause; and (2) Mr. Yusev has substantial ties to the community. We disagree that either of these considerations constitutes special circumstances that would support Mr. Yusev's release on bond.

### A.

By arguing that the extradition request is politically motivated and not supported by probable cause, Mr. Yusev appears to contend that he should be released on bond because he will succeed on the merits of his opposition to extradition. "[S]ubstantial claims showing a high probability of success on the merits" may be sufficient to show special circumstances warranting release on bond. *See In re Extradition of Kapoor*, 11 M 456 RML, 2011 WL 2296535, at *4 (E.D.N.Y. June 7, 2011).

However, a "high probability of success on the merits" is a difficult showing to make, because persons challenging extradition have only a limited right to challenge the evidence against them. *See Sahagian*, 864 F.2d at 514. "An accused in an extradition hearing has no right to contradict the demanding country's proof or to pose questions of credibility as in an ordinary trial, but only to offer evidence which explains or clarifies that proof." *Id.* (quoting *Eain v. Wilkes*, 641 F.2d 504, 511 (7th Cir. 1981)).

Here, Mr. Yusev has not shown a high probability of success on the merits. Extradition requires: (1) that the offenses charged are extraditable, *i.e.*, that they fall within the Treaty's terms, including any clause or provision excepting political offenses from extradition; and (2) probable cause to believe the extraditee committed the crimes charged. *See Eain*, 641 F.2d at 508, 513 n.12 (citing 18 U.S.C. § 3184); *see also Haxhiaj v. Hackman*, 528 F.3d 282, 290-91

(4th Cir. 2008) (same). Mr. Yusev does not dispute that the offenses for which he was convicted in Bulgaria are subject to extradition under the Treaty. His argument that the charges against him were not supported by probable cause is limited to his claim that the charges were politically motivated (*see* doc. # 13: Yusev's Mot. at 2-4). Specifically, Mr. Yusev contends that his family has been persecuted by the Bulgarian government since 2000 because they were members of an organization (OMO-Ilinden) that fought for the rights of ethnic Macedonians, and that after his parents fled to the United States to seek asylum in 2005, the Bulgarian police arrested him for political reasons on the charges listed in the extradition request (*Id.*).

The alleged political motivation of the government requesting extradition, however, cannot constitute special circumstances warranting bond. The Secretary of State maintains the sole discretion to decide whether to reject a request by a treaty partner for extradition on the ground that it is a subterfuge for a country's motives to punish the individual for a political crime. *Eain*, 641 F.2d at 513; *see also Haxhiaj*, 528 F.3d at 291 ("[q]uestions about procedural fairness of another sovereign's justice system are within the purview of the executive branch as are questions whether the requesting nation is sincere in its demand for extradition or is merely using the process as a subterfuge"). The extradition statute, 18 U.S.C. § 3184, requires the Court to determine, in the first instance, whether the crime alleged is listed in the applicable treaty, and whether the provision of the treaty excluding political offenses applies. *Eain*, 641 F.2d at 513-15. The Court's inquiry does not touch on the motivations of the country requesting extradition. *Id.* at 516.

We further note that the Treaty, which governs our consideration in this case, expressly states that extradition will be denied "if the *executive authority* of the Requested State [here, the United States] determines that the request was politically motivated" (doc. # 1: Gov.'s Compl.

5

for Extradition, Ex. YUSEV-000124 (Treaty, art. 4, sec. 3) (emphasis added)). Interpreting an identical provision in the extradition treaty between the United States and Peru, the Fourth Circuit held that "[a]ny question into the Peruvian government's motivations is therefore well beyond this Court's legitimate realm of authority under the Treaty and must be addressed solely to the Secretary of State." *Ordinola v. Hackman*, 478 F.3d 588, 604-05 (4th Cir. 2007). Thus, Mr. Yusev's primary argument for release on bond – that the request for his extradition was politically motivated – is not even one that this Court may consider.

Our ruling should not be read to mean that that "special circumstances" constitute a theoretical standard that in reality can never be met. For example, in *Castaneda-Castillo*, the court found special circumstances existed where the defendant had already been in government custody on his immigration matter for five years; was not a fugitive, but had been living openly in the United States for the past nineteen years; faced inevitable delay in his extradition proceedings; and would likely succeed on the merits, given prior findings by the Board of Immigration Appeals and a Peruvian military court. *Castaneda-Castillo*, 739 F. Supp. 2d at 55-57. *See also Molnar*, 182 F. Supp. 2d at 688-89 (finding "weak" special circumstances existed where the defendant had never been a fugitive from justice, there was a possible delay in the extradition proceedings, the defendant's seriously ill mother depended on the money he sent to her, and the criminal charges were initially dropped against the defendant, only to be reinstated after he had left Hungary, possibly showing a weakness in the criminal charges against him). However, in this case, Mr. Yusev presents no similar evidence that could present special circumstances to support a release on bond during the pendency of the extradition proceedings.

### B.

Mr. Yusev also argues that he should be released on bond because he has substantial ties to the community, which appears to be an argument that he is not a significant flight risk. This argument is a non-starter.

*First*, as explained above, absence of flight risk does not qualify as a special circumstance justifying release on bond. *See Rouvier*, 839 F. Supp. at 541 (absence of flight risk is not a special circumstance; court denied release on bond even though the defendant had strong familial and economic ties to the United States -- he was married to an American citizen and employed full-time -- and "he [wa]s clearly not a risk of flight"). Because Mr. Yusev has not presented special circumstances, he would not present a sufficient case for release on bond even if he were not a flight risk.

*Second*, in any event, Mr. Yusev has failed to demonstrate that he is not a significant flight risk. Mr. Yusev claims that he has substantial ties to the community because he was a full-time college student between 2009 and 2011; he is currently enrolled at ORT Technical Institution; and prior to his incarceration, he lived with his gainfully-employed parents in the Chicago area (Yusev's Mot. at 4). But, this selective recitation does not tell the whole story on the question of flight risk. This is not a case like *Castaneda-Castillo*, 739 F. Supp. 2d at 55-57, where, among other things, the defendant was not a fugitive and had been living openly in the United States for some 19 years. To the contrary, Mr. Yusev came to the United States using a fraudulent visa; attended school and engaged in other activities here using an array of false documents; and pled guilty in federal court in Chicago to visa fraud. In addition, Mr. Yusev's

parents themselves have no legal status in the United States and are currently in removal proceedings.

These are among the same considerations that this Court cited when it denied Mr. Yusev release on bond in his criminal case when applying the standards set forth in the Bail Reform Act; Mr. Yusev has fallen far short of demonstrating that he warrants a release on bond under the far more restrictive standards applicable in this extradition matter. At bottom, Mr. Yusev has no legitimate ties here that would mitigate the risk, that if given bond, Mr. Yusev would flee rather than face the proceedings that could return him to the country he wishes to avoid.

## CONCLUSION

For the foregoing reasons, Mr. Yusev's motion for release on bond (doc. # 13) is DENIED.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

Dated: March 27, 2013