UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN THE MATTER OF THE EXTRADITION OF ) No. 12 M 727
GEORGI PETROV YUSEV )
) Magistrate Judge Sidney I. Schenkier

**MEMORANDUM OPINION AND ORDER AND CERTIFICATION OF EXTRADITION**

The Government of the Republic of Bulgaria ("the Bulgarian Government") has requested the extradition of Defendant Georgi Petrov Yusev pursuant to the Extradition Treaty with Bulgaria. U.S.-Bulg., Sept. 19, 2007, S. Treaty Doc. No. 110-12 (2008) ("Treaty"). Mr. Yusev asks us to deny the request for certification of extradition to the United States Secretary of State on the grounds that it is unsupported by probable cause (doc. # 24: Brief in Opposition to the Government's Request for Certification of the Extradition of Georgi Petrov Yusev). For the reasons stated below, this Court finds that there is sufficient evidence to sustain a finding of probable cause. This Court therefore certifies this extradition case to the U.S. Secretary of State for further consideration.

I.

This Court issued an earlier opinion denying Mr. Yusev's request for release pending hearing. *In the Matter of the Extradition of Georgi Petrov Yusev*, No. 12 M 727, 2013 WL 1283822, at *1 (N.D. Ill. Mar. 27, 2013). We draw many of the following facts concerning the procedural history from that opinion.

Mr. Yusev was arrested by Bulgarian authorities on October 17, 2006, and later charged by the Bulgarian government with (1) narcotics possession, (2) committing unlawful damage to motor vehicles, and (3) inflicting minor bodily injury to intelligence officers. *Yusev*, 2013 WL 1283822, at *1. After missing several court hearings, on November 18, 2008, Mr. Yusev applied

for a United States nonimmigrant visa with a fraudulently obtained passport in the name of Kamen Aleksandrov Vasev. *Id.* He fled Bulgaria shortly thereafter, arriving at Chicago's O'Hare International Airport on December 3, 2008. *Id.* Several months later, on April 13, 2010, Mr. Yusev was convicted *in absentia* in the District Court in Bulgaria. *Id.*

On March 29, 2012, a federal grand jury in the Northern District of Illinois returned an indictment against Mr. Yusev, charging him with visa fraud. *Yusev*, 2013 WL 1283822, at *1. In a June 4, 2012 order, this Court granted the government's motion to detain Mr. Yusev on that charge and denied Mr. Yusev's request for pretrial release on bond. *Id.* On September 20, 2012, Mr. Yusev pled guilty to the charge of visa fraud, and on November 17, 2012, he was sentenced to sixth months' imprisonment, time served, and remanded into the custody of the United States Immigration and Customs Enforcement agency pending removal proceedings. *Id.*

On January 14, 2013, Mr. Yusev was arrested pursuant to a complaint filed at the Bulgarian Government's request under the Treaty between the United States and Bulgaria. *Yusev*, 2013 WL 1283822, at *1. On February 5, 2013, Mr. Yusev filed a motion to be released on bond. *Id.* This Court denied his request in the March 27, 2013 order. *Id.* at *1, 5. On August 23, 2013, Mr. Yusev filed his present motion to deny certification of his extradition to Bulgaria (doc. # 24).

## II.

The process of extraditing a fugitive from the United States to Bulgaria is governed by federal extradition statutes, 18 U.S.C. §§ 3181-96 (2012), and the Treaty between the United States and Bulgaria. *See In re Extradition of Mazur*, No. 06-M-295, 2007 WL 2122401, at *1 (N.D. Ill. July 20, 2007). Under the Treaty, the United States and Bulgaria have agreed to "extradite to each other . . . persons sought by authorities in the Requesting State for prosecution

or for imposition or execution of a sentence for an extraditable offense." Treaty, Art. 1. An extraditable offense includes any offense "punishable under the laws in both States by deprivation of liberty for a maximum period of more than one year or by a more severe penalty . . . regardless of whether the laws in the Requesting or Requested States place . . . the offense within the same category of offenses or described the offense by the same terminology . . . ." *Id.*, Art. 2. Additionally, "[w]here the request is for enforcement of the sentence of a person convicted of an extraditable offense, the deprivation of liberty must be at least four months." *Id.* Sufficient evidence must be furnished by the requesting state so as to "provide a reasonable basis to believe that the person sought committed the offense for which extradition is requested." *Id.*, Art. 8.

The authority of a magistrate judge to serve as an extradition judicial officer is granted by 18 U.S.C. § 3184. *In re Extradition of Figueroa*, 12 M 269, 2013 WL 3243096, at *3 (N.D. Ill. June 26, 2013). By statute, this Court determines whether the evidence presented by the requesting government is "sufficient to sustain the charge under the provisions of the proper treaty or convention . . . ." 18 U.S.C. § 3184. The authority of a magistrate judge serving as an extradition judicial officer "is limited to determining an individual's eligibility to be extradited, which is done by ascertaining (1) whether the crime[s are] extraditable offense[s] under the subject treaty, and (2) whether probable cause exists to sustain the charge[s]." *Figueroa*, 2013 WL 3243096, at *2 (quotation omitted). If the magistrate judge determines that the charged offenses are within the treaty's terms and probable cause exists, he or she certifies the matter to the Secretary of State, who has sole discretion to determine if the extradition should proceed. *Id.*; *Eain v. Wilkes*, 641 F.2d 504, 508 (7th Cir. 1981).

3

The purpose of an extradition hearing under 18 U.S.C. § 3184 is to provide a judicial determination that the evidence is sufficient to sustain the charges under the provisions of the treaty. A request for certification of extradition will be granted if the following findings are made: (1) the judicial officer has jurisdiction to conduct an extradition proceeding; (2) the Court has jurisdiction over the fugitive; (3) the person before the Court is the fugitive named in the request for extradition; (4) there is an extradition treaty in full force and effect; (5) the crimes for which surrender is requested are covered by that treaty; and (6) there is competent legal evidence to support the finding of probable cause as to each charge for which extradition is sought. *In re Rodriguez Ortiz*, 444 F. Supp. 2d 876, 881-82 (N.D. Ill. 2006) (citing *Eain*, 641 F.2d at 508).

Mr. Yusev does not dispute the first five factors of the extradition analysis (doc # 24). And, with good reason: after examining the record, this Court finds that all five of these factors are satisfied. Thus, the Court turns to the sixth factor, which is the sole factor that Mr. Yusev challenges: whether there is competent legal evidence to support the finding of probable cause as to each charge for which extradition is sought.

### III.

An extradition proceeding is not a trial on the merits; rather, it is similar to a preliminary hearing in a criminal matter. *Bovio v. United States*, 989 F.2d 255, 259 (7th Cir. 1993). This Court "cannot resolve factual disputes; for that matter, [this Court] cannot address most legal issues pertinent to the charges." *DeSilva v. DiLeonardi*, 125 F.3d 1110, 1112 (7th Cir. 1997). "An American court must give great deference to the determination of the foreign court in an extradition proceeding." *Lindstrom v. Gilkey*, 98 C 5191, 1999 WL 342320, at *6 (N.D. Ill. May 14, 1999) (brackets omitted) (quoting *Casey v. Dep't of State*, 980 F.2d 1472, 1476-77 (D.C. Cir. 1992)). This Court does not determine whether Mr. Yusev is guilty of the charges alleged by the

Bulgarian Government, "but merely whether there [is] competent legal evidence which would justify his apprehension and commitment for trial if the crime had been committed in Illinois." *Ortiz*, 444 F. Supp. 2d at 884 (citing *Collins v. Loisel*, 259 U.S. 309, 314-15 (1922)). "Probable cause will be found where there is evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the guilt of the accused." *Ortiz*, 444 F. Supp. 2d at 884. In making a determination of probable cause, "courts apply a totality of the circumstances analysis and make a practical, common sense decision whether, given all the circumstances . . . there is a fair probability that the defendant committed the crime." *Id.* (quotations omitted).

The Federal Rules of Evidence and the Federal Rules of Criminal Procedure do not apply in extradition proceedings. *Bovio*, 989 F.2d at 259 n.3. Thus, hearsay evidence may be considered and may form the basis for a finding of probable cause. *In re Extradition of Nolan*, 651 F. Supp. 2d 784, 795 (N.D. Ill. 2009). However, the evidence offered in support of extradition must be "competent and adequate." *Id.* (citing *Bingham v. Bradley*, 241 U.S. 511, 517 (1916)). When "presented with evidence through affidavits, the court may conclude, on a review of the affidavits submitted, that there are insufficient *indicia* of reliability or credibility to establish probable cause." *Ortiz*, 444 F. Supp. 2d at 884 (quotation omitted). Likewise, when an extradition request consists of "mere conclusory allegations unsupported by substantive evidence, extradition will be denied." *Id.* (citation omitted).

A respondent's right to challenge the evidence introduced against him in an extradition proceeding is limited. *Ortiz*, 444 F. Supp. 2d at 884. He can offer evidence that "obliterates" probable cause. *Mazur*, 2007 WL 2122401, at *19 (citations omitted). However, a respondent to an extradition request "is not entitled to contradict the demanding country's proof or pose

questions of credibility, but is limited to offering evidence which explains or clarifies that proof." *Nolan*, 651 F. Supp. 2d at 794 (quoting *In re Extradition of Guillen*, No 90 CR 1056, 1991 WL 149623, *8 (N.D. Ill. July 12, 1991)). The explanatory evidence is intended to "afford an accused person the opportunity to present reasonably clear-cut proof which would be of limited scope and have some reasonable chance of negating a showing of probable cause." *Figueroa*, 2013 WL 3243096, at *5 (citation omitted). However, the court must ensure that the extradition proceedings are not converted into a "dress rehearsal trial." *Id.* (citing *Jhirad v. Ferrandina*, 536 F.2d 478, 484 (2nd Cir. 1976), *cert. denied*, 429 U.S. 833 (1976)). For this reason, evidence attacking the credibility of a witness is not permissible, and any issues of credibility are to be resolved at trial. *Mazur*, 2007 WL 2122401, at *19 (citations omitted).

### A.

This Court now turns to the evidence offered by the Bulgarian Government in support of probable cause.[1] On the night of October 17, 2006, the Regional Police Office of Blagoevgrad, Bulgaria conducted a special police operation to arrest individuals acquiring controlled substances from Vladimir Pashov, a low-level narcotics distributer. YUSEV-00049, YUSEV-00366–00367. At around 10:15 p.m., Mr. Yusev stopped his car in front of Mr. Pashov's apartment complex. YUSEV-00057. Mr. Yusev's passenger, Nikolay Georgiev Kotokov, got out of the car and walked up to Mr. Pashov's apartment while Mr. Yusev waited in the street below. *Id.* Mr. Kotokov purchased two small packs of marijuana and ten small packs of cocaine from Mr. Pashov. *Id.* Mr. Kotokov returned to Mr. Yusev's car and placed the cocaine on the floor near the front passenger's seat. YUSEV-00057-00058.

---

[1] Citations beginning with "YUSEV" refer to the bates-stamped copy of the record that was distributed to both parties and to this Court.

Upon Mr. Kotokov's return, police officers approached Mr. Yusev's car. YUSEV-00058. They displayed their police badges and ordered Mr. Yusev to stop and turn off the car engine. *Id.* Mr. Yusev did not comply with the policemen's orders and instead drove the car in reverse, injuring four police officers. *Id.* A short chase ensued, during which Mr. Yusev struck and damaged several parked cars before being detained by the police. YUSEV-00058-00059.

The police then searched Mr. Kotokov's person and found the 94.2 grams of marijuana hidden in his underwear. YUSEV-00060. The following day, the police searched Mr. Yusev's car and found 3.2 grams of cocaine located between the passenger seat and the front door. YUSEV-00060-00061.

At the conclusion of the official police report, both Mr. Yusev and Mr. Kotokov provided signed, handwritten statements about the cocaine found in Mr. Yusev's car. YUSEV-00469-00470. Mr. Yusev wrote: "This cocaine [Mr. Kotokov] bought from [Mr. Pashov] on 17.10.2006 at around [9:40 p.m.]. [Signed:] Georgi Yusev." YUSEV-00469. Immediately below Mr. Yusev's statement, Mr. Kotokov wrote: "This cocaine I have bought from [Mr. Pashov] on 17.10.2006 at around [9:40 p.m.], together with the cannabis. [Signed: Nikolay] Georgiev Kotokov." YUSEV-00470.

On July 4, 2007, Mr. Yusev, Mr. Kotokov, and Mr. Pashov appeared for trial at the District Court in Bulgaria. YUSEV-00432. Fourteen people testified. YUSEV-00434-00436. Of these, four were police officers who were involved in the arrest of Mr. Yusev, one was a medical expert, one was a forensic expert, two were police officers who inspected Mr. Yusev's car, two were police officers who helped seal and seize Mr. Yusev's car, one was a civilian who had witnessed a portion of the events, and three were civilians whose cars were damaged during Mr. Yusev's attempted getaway. YUSEV-00437–00461. One of the police officers testified that

Mr. Yusev said that he had agreed to transport Mr. Kotokov to Mr. Pashov's residence so he could buy drugs. YUSEV-00448. The police officer further testified that Mr. Yusev had said that he and Mr. Kotokov intended to use some of the drugs themselves and to sell the remainder. *Id.* Neither Mr. Yusev nor the other two people charged testified. YUSEV-00437-00461.

In an April 13, 2010 order, Mr. Yusev's accomplice, Mr. Kotokov, was convicted of narcotics possession and sentenced to two years of imprisonment. YUSEV-00040-00041. In that same order, Mr. Yusev was convicted *in absentia* of narcotics possession, committing unlawful damage to motor vehicles, and inflicting minor bodily injury to intelligence officers. YUSEV-00042–00045. For these crimes, Mr. Yusev was sentenced *in absentia* to imprisonment for three years and two months. YUSEV-00045-00046. Mr. Yusev has not served this sentence because he has been living in the United States since December 2008. *Yusev*, 2013 WL 1283822, at *1.

**B.**

The government relies primarily on the witness testimony of the four police officers to establish probable cause (doc. # 14). After a close examination of the record, this Court finds their testimony sufficient to establish probable cause. There are no material inconsistencies between the four police officers' testimonies, nor are there any material inconsistencies between the officers' testimonies and the official police reports. YUSEV-00459-00460; *see also Figueroa*, 2013 WL 3243096, at *7-8 (finding sworn statements to be credible when they were consistent with one another).

Moreover, at trial, a medical expert corroborated the injuries sustained by the police officers during the encounter with Mr. Yusev, and two civilian witnesses testified that the damage done to their vehicles was the result of Mr. Yusev's attempted getaway. YUSEV-

00459–00460. The subsequent confession and conviction of Mr. Yusev's alleged accomplice, Mr. Kotokov, also lends credence to the police officers' accounts. YUSEV-00041.

The police officers' testimonies are further supported by the acts of Mr. Yusev himself. Mr. Yusev's provided a signed, handwritten statement that Mr. Kotokov bought cocaine from Mr. Pashov. YUSEV-00469. Moreover, Mr. Yusev concealed his identity and fled from Bulgaria to the United States, which also "permits an inference of guilt." *Eain*, 641 F.2d at 511. And, Mr. Yusev's conviction *in absentia* supports a finding of probable cause in and of itself. *See Esposito v. I.N.S.*, 936 F.2d 911, 914 (7th Cir. 1991) ("[*I*]*n absentia* convictions properly constitute probable cause to believe that the petitioner is guilty of the crimes in question").

Based on the totality of evidence, this Court finds enough in the record to support the existence of probable cause in this case. *See Ortiz*, 444 F. Supp. 2d at 884.

### C.

Mr. Yusev makes several arguments against a finding of probable cause. We find each argument unavailing.

*First*, Mr. Yusev argues that the record is devoid of certified transcripts of testimony (doc. # 24). This is inaccurate. A cursory examination of the record shows that the Bulgarian government provided twenty-nine pages of transcripts from Mr. Yusev's trial in the Bulgarian District Court on July 4, 2007. YUSEV-00432–00461. These transcripts were properly certified in accordance with the extradition statute. Treaty, Art. 8; 18 U.S.C. § 3190 (2012) (stating that proffered materials "shall be received and admitted as evidence . . . if they shall be properly and legally authenticated . . . .").

*Second*, Mr. Yusev argues that the Bulgarian record does not contain Yusev's written confession (doc. # 24). Again, this is inaccurate. The record contains Mr. Yusev's signed,

9

handwritten statement that Mr. Kotokov purchased the cocaine found in Mr. Yusev's car. YUSEV-00469. Although Mr. Yusev's inculpatory statement does not conclusively establish his guilt, in the context of an extradition hearing, it supports a finding of probable cause. *See Eain*, 641 F.2d at 510 ("[I]n the context of an extradition proceeding . . . the confession of the defendant [is] the most satisfactory kind of evidence that can be produced as to the guilt of the defendant" (quotation omitted)).

*Third*, Mr. Yusev argues that because the search of his car was done illegally, the narcotics possession conviction is unsupported by probable cause (doc. # 24). There is merit to Mr. Yusev's complaint about the search. The Bulgarian District Court itself recognized that the Blagoevgrad police should not have searched Mr. Yusev's car without first obtaining a search warrant. YUSEV-00061. Nonetheless, the District Court in Bulgaria decided that Mr. Yusev's written confession, in conjunction with the testimony of the police officers, was sufficient to find Mr. Yusev guilty of narcotics possession. *Id.* Reviewing the merits of such a decision in an extradition proceeding would be inappropriate. *Gilkey*, 1999 WL 342320, at *6. "An American court must give great deference to the determination of the foreign court in an extradition proceeding." *Id.* (brackets omitted) (quoting *Casey v. Department of State*, 980 F.2d 1472, 1476–77 (D.C. Cir. 1992)); *see also United States v. Kin-Hong*, 110 F.3d 103, 111 (1st Cir. 1997) ("The larger assessment of extradition and its consequences is committed to the Secretary of State. . . . [American] courts refrain from investigating the fairness of a requesting nation's justice system" (quotation omitted)).

## CONCLUSION

Based on the foregoing, we conclude that there is sufficient evidence to "cause a person of ordinary prudence and caution to consciously entertain a reasonable belief" of Mr. Yusev's

10

guilt on the convictions of narcotics possession, committing unlawful damage to motor vehicles, and inflicting minor bodily injury to intelligence officers. *Nolan*, 651 F. Supp. 2d at 815. This Court therefore finds that Georgi Petrov Yusev is extraditable for these offenses, and that there is probable cause to certify this finding to the United States Secretary of State, as required under 18 U.S.C. § 3184.

IT IS THEREFORE ORDERED that a certified copy of this Memorandum Opinion and Order and Certification of Extradition, along with all formal extradition documents received into evidence, a certified copy of all testimony taken at the hearings, and a copy of all memoranda of law filed on the issue of extradition be delivered by the Clerk of the Court of the Northern District of Illinois to the Assistant United States Attorney for this District for transmission to the United States Secretary of State.

IT IS FURTHER ORDERED that Georgi Petrov Yusev remain in the custody of the United States Marshal pending final disposition of this matter by the Secretary of State and the arrival of agents of the Government of Bulgaria for the purpose of his extradition to Bulgaria to serve his sentence.

ENTER:

_[signature]_

SIDNEY I. SCHENKIER
**United States Magistrate Judge**

Dated: **October 29, 2013**